IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KASIB TAUHEED BILAL                                              PLAINTIFF

v.                                  No. 4:16-cv-675-DPM

IDS PROPERTY & CASUALTY
INSURANCE COMPANY                                                DEFENDANT

ORDER

**1.** Bilal is an older African-American Muslim gentleman. His home was damaged by two storms, one in October 2014 and another in January 2015. IDS Property & Casualty Insurance Company had Bilal's homeowner's coverage. This case is about the allegedly discriminatory things said and done in handling the insurance claims from the storms.

After the first storm, IDS engaged Insurance Claims Adjusters, Inc., to inspect the damage. That company, in turn, assigned the claim to Arkansas Insuring Adjusters, Inc. This second company is owned and operated by Garry Smith, who went to inspect, document, and appraise the damage. Bilal says, and the Court accepts as true, that Smith asked him where the name "Bilal" comes from and how it's pronounced. When Smith learned that Bilal is Muslim, he said, "Oh, you're one of them." This upset Bilal, but he went on with the inspection. Smith appraised the damage at just more than $1,600.

A few months later, after the second storm, IDS hired a different adjustment company, Associated Adjusters Network, to evaluate the new damage. The adjuster this time around was Daniel Parker. He evaluated the damage and estimated $1200 would cover the needed repairs.

Bilal thought both appraisals were too low, so he hired a roofer and sent his own estimates to the insurance company. IDS rejected Bilal's estimates and sent him two checks, one for each storm, based on the adjusters' numbers. Bilal cashed those checks but continued calling IDS seeking more money for repairs. In March 2015, IDS decided not to renew Bilal's policy. The company cited increased risks and hazards at Bilal's house based on missing siding, peeling paint, loose window trim, missing and lifting shingles, dry rotting fascia, and other conditions. № 42-4 *at 3*.

After months of back and forth, Bilal and IDS compromised. The company used one of Bilal's estimates, which had pegged the total cost of repairing the damage from both storms at $4800. IDS divided that amount between the claims, subtracted what had already been paid, and sent Bilal two more checks. He cashed them, then filed this case.

**2.** Bilal made many federal claims in his *pro se* complaint. On screening, the Court concluded that Bilal had stated a plausible "claim under 42 U.S.C. § 1981 for unequal treatment based on race in a

contractual relationship[,]" and dismissed all other claims without prejudice. № 5 at 2. It became clear that IDS, not Progressive, was the right insurance company, and that change was made. Discovery was done. Bilal requested appointed counsel several times, but the Court concluded he could handle his own case. IDS seeks summary judgment. The Court takes the genuinely disputed facts in the light most favorable to Bilal. *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1363–64 (8th Cir. 1983).

**3.** IDS's argument that parties' compromise should end the case might seem strong, but it isn't. There is no written agreement. The deal was made in a phone call. № 42-3 at 1-2. Bilal cashed the checks, but they don't say "full and final settlement" or any similar words. There's just not enough here for the Court to rule that the parties made a firm deal to resolve all differences. *Glover v. Woodhaven Homes, Inc.*, 346 Ark. 397, 403–04 (2001). Plus, any settlement was (at most) about coverage, not any related discrimination claims. On the record presented, though, IDS is entitled to judgment as a matter of law for several other reasons.

First, Bilal's remaining claim was for race discrimination, and there's no evidence that his race prompted IDS's coverage decisions. *Green v. Dillard's, Inc.*, 483 F.3d 533, 538, 540 (8th Cir. 2007). The insurance company has offered sworn testimony that Bilal's race

played no role in the company's actions.  № 42-2 *at 1 &* № 42-3 *at 2*. Bilal hasn't met this proof with contrary proof.  *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Second, § 1981 probably doesn't provide a vehicle for challenging discrimination based on religion.  *E.g., Noyes v. Kelly Services*, 488 F.3d 1163, 1167 n.3 (9th Cir. 2007); *Manzanares v. Safeway Stores, Inc.*, 593 F.2d 968, 971–72 (10th Cir. 1979).  This Reconstruction-era statute speaks of every person having the same rights to make and enforce contracts as "white citizens" have.  42 U.S.C. § 1981(a).  While the Eighth Circuit hasn't addressed this issue, the law's trend toward limiting this statute to race-related claims is clear.

Third, assuming § 1981 does apply, based on discriminatory animus that mixed race and religion, there's a vicarious-liability hurdle. Smith wasn't an IDS employee.  He worked for an independent adjustment company, which had been assigned the claim by another independent adjustment company, which had been hired by Bilal's insurance company.  So Smith was two steps removed from IDS. If—as has been strongly urged in a two-judge concurrence—§ 1981 requires purposeful discrimination, then the record might well support a claim against Smith individually, but not IDS.  *Ellis v. Houston*, 742 F.3d 307, 326–28 (8th Cir. 2014).  The unrebutted affidavits establish, instead, that Bilal's religion played no part in IDS's decisions.  № 42-2

- 4 -

*at* 1 & № 42-3 *at* 2. And if Smith's estimate was a lowball, infected by race and religion, IDS's eventual acceptance of Bilal's higher repair estimate cured the infection. There's no evidence that the insurance company itself interfered with its own contract with Bilal because he was an African-American Muslim.

Last, the policy cancelation. Bilal has not met proof with proof on the reason why. IDS's risk-based explanation is unrebutted. *Matsushita*, 475 U.S. at 586–87. On this record, a jury could not reasonably conclude that Bilal's race or religion had anything to do with the non-renewal.

* * *

Motion for summary judgment, № 42, granted.

So Ordered.

*[signature]*
D.P. Marshall Jr.
United States District Judge

27 October 2017